UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS RIOS,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office; and CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center,<br><br>　　　　　　　　　Respondents. | Case No.: 25-cv-2866-JES-VET<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

　　　Before the Court is Petitioner Carlos Rios' ("Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 against United States immigration officials Kristi Noem, Pamela Bondi, Todd M. Lyons, Jesus Rocha, and Christopher LaRose ("Respondents") in their official capacities. ECF No. 1 ("Pet"). Petitioner seeks relief from his re-detention and potential removal to a third country. For the reasons set forth below, the petition and prayer for release is **GRANTED** on grounds of due process and

Administrative Procedure Act ("APA") violations. Petitioner's remaining claims are **DENIED** as moot or as pleading relief unavailable on habeas.

## I.     BACKGROUND

Petitioner is a citizen of Cuba who has lived in the United States since 1988. Pet. at 4. He is married to a U.S. Citizen and has worked various jobs during his time in the U.S. *Id.*

In 2021, an immigration judge ordered Petitioner removed to Cuba after he served a 27 year sentence for murder. *Id.*; ECF No. 10 ("Opp.") at 2. Petitioner was placed in immigration detention pending removal for two months. Pet. at 4. When the government was unable to effectuate Petitioner's removal to Cuba, Petitioner was granted supervised release. *Id.* During his supervised release, Petitioner conformed with the terms of his release and attended all of his appointments. *Id.*

On September 22, 2025, at his yearly check-in with immigration officials, Petitioner was re-detained and sent to Otay Mesa Detention Center. *Id.* Petitioner initially stated that he was given no notice of the revocation of his release; however, Respondents produced a Form I-200, Warrant for Arrest of Alien, and a formal Notice of Revocation of Release given to Petitioner at the time he was redetained. *Id.*; Opp. at 2; ECF Nos. 10-3, 10-4; ECF No. 11 at 2. The Notice of Revocation of Release stated that Petitioner's revocation had been revoked based on a determination that there were changed circumstances in his case. ECF No. 10-4 at 2. The Notice of Revocation of Release incorrectly stated that Petitioner was granted a withholding of removal from Cuba (ECF No. 11 at 2), despite Petitioner never being granted such a withholding. ECF No 10-4 at 2.

On October 1, 2025, immigration officers attempted to remove Petitioner to Mexico by driving him to the border. Pet. at 4. Petitioner claims that the officers told him that if he did not cross into Mexico, he would later be placed on a plane to Africa. *Id.* Respondents deny that such a statement was made. ECF No. 13-1 ¶ 11. Petitioner refused to cross the border and asked to speak to a supervisor. Pet. at 4. He was driven back to the detention center. *Id.*

While Respondents initially claimed Petitioner was given notice before his third country removal to Mexico, when the Court asked for further information Respondents submitted a sworn declaration stating that although it is ICE's practice to provide notice, "[a]t this time, Petitioner's file does not contain a copy of a Notice of Third Country Removal." ECF No. 13-1 ¶ 10. Respondents make no claims that Petitioner was given proper notice of third country removal that was somehow not filed. Respondents state that "[a]s removal to Mexico was unsuccessful, ICE no longer intends to seek to remove Petitioner to Mexico. ICE is continuing to seek to identify a third country for repatriation." *Id.* ¶ 12.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kimi*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

### A. Procedural Due Process

Petitioner argues that Respondents violated Petitioner's rights under the Fifth Amendment by re-detaining him without adequate notice, evidentiary findings, or an opportunity to be heard. Pet. at 9. The Court agrees.

"A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Miranda v. City of Casa Grande*, 15 F4th 1219, 1225 (9th Cir. 2021) (internal quotations and citation omitted).

Petitioner was deprived of a constitutionally protected liberty interest when Respondents revoked his supervised release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. at 690. Although immigration detention is administrative, it is still subject to due process clause review. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.") When the government grants an alien supervised release into the country, it creates a liberty interest intimately tied to freedom from imprisonment. *Alegria Palma v. LaRose*, 25-cv-1942, ECF No.14 (S.D. Cal. Aug. 11, 2025) (finding that "continued freedom after release on own recognizance" was a core liberty interest). Here, Petitioner was deprived of his liberty interest in his supervised release when Respondents re-detained him.

Respondents are required to give Petitioner adequate procedural protections in the revocation of his supervised release. "The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (Frankfurter, J., concurring). In the immigration context, "the Constitution requires the government to afford notice of any action against an alien [and] requires an opportunity for the alien to be heard. [] The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner." *Ying Fong v. Ashcroft*, 317 F.Supp.2d 398, 403 (S.D.N.Y. 2004) (internal quotations and citations omitted).

An alien's opportunity to be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release "at any time" on a discretionary, but not unlimited, basis. *See* 8 U.S.C. § 1226(b); *Mohammed H. v. Trump*, No. 25-1576 (JWB/DTS), 2025 WL 1692739, at *5 (D. Minn. June 17, 2025) ("The Government has wide—but not unlimited—discretion in the immigration realm.") The Board of Immigration Appeals ("BIA") has held that DHS may change the conditions of an alien's parole or supervised release only when there is a sufficient change of circumstances to justify that change. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) (as cited in *Alegria Palma*, No. 25-cv-1942-BJC-MMP, ECF No.14 at 3). "In practice, the DHS re-arrests individuals only after a 'material' change in circumstances." *Ortega v. Bonnar*, 415 F.Supp.3d 963, 968 (N.D. Cal. 2019). To satisfy due process, those changed circumstances must represent individualized legal justification for detention. *Mohamed H.*, 2025 WL 1692739 at *5 (granting a writ of habeas corpus on due process grounds due to a lack of individualized legal justification for changing the petitioner's status).

Here, Respondents vested a protected liberty interest in Petitioner when it granted him supervised release. *See* Pet. at 2. Although Respondents provided Petitioner with a Notice of Revocation of Release at the time of his arrest, that notice was insufficient because it did not contain individualized legal justification for the revocation of his supervised parole. ECF 10-4; *see Salim Nizar Esmail v. Kristi Noem, et al.*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *5 (C.D. Cal. Sept. 12, 2025) ("As the Notice does not identify any specific changed circumstances, it is insufficient to put Petitioner on notice as to what led to the revocation of his [supervised release].") (internal quotations and citations omitted)). In fact, the information in the document regarding Petitioner's case, stating that he was granted a withholding of removal to Cuba, was factually incorrect. *Id.* It would be impossible for Respondent to meaningfully contest the materiality of any changed circumstances in his case, because the government provided only general and inaccurate information. *See Ying Fong v. Ashcroft*, 317 F.Supp.2d at 403; *Matter of Sugay*,

17 I. & N. Dec. at 640. Thus, Respondents violated Petitioner's due process rights in their revocation of his supervised release. The petition for writ of habeas corpus on due process grounds is **<u>GRANTED</u>**.

### B. Administrative Procedure Act

The Court need not reach Petitioner's claims arising under the APA, because it grants his petition on due process grounds. However, to preserve Petitioner's rights on appeal, the Court briefly finds that the APA also provides separate and adequate grounds to grant this petition for writ of habeas corpus regarding both the revocation of his supervised release and Respondents' attempt to remove him to the third country of Mexico.

The APA requires courts to hold challenged final agency actions unlawful when the actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious when the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). ICE, like other agencies, is required to follow its own regulations. *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) ("The legal proposition that agencies may be required to abide by certain internal policies is well-established.") When an agency changes its policies, it also "must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dept. of Homeland Security v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30 (2020) (internal quotations and citations omitted). A government agency terminating an alien's status is subject to review under the APA as a final agency action when the termination has lasting consequences that would not be cured even if the agency reinstated status through its internal processes. *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172,183 (3rd Cir. 2019); *Doe v. Noem*, 778 F.Supp.3d 1151, 1159 (W.D. Wash. April 17, 2025). In any agency action "[w]here the rights of

individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974).

Here, given Respondents' diligent efforts to remove Petitioner after revoking his release (Opp. at 2), their termination of his supervised release is reviewable as a final agency action that will have lasting incurable consequences. As explained above, the record here shows that Respondents did not articulate a satisfactory explanation including a "rational connection between the facts found and the choice made" for the change to Petitioner's status. *See Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43; ECF No. 10-4. Respondents also do not show any consideration of the "serious reliance interests" that they have engendered in Petitioner by granting him supervised release prior to their change in policy. *See Dept. of Homeland Security v. Regents of the Univ. of Calif.*, 591 U.S. at 30. Because Respondents revoked Petitioner's supervised release and detained him without any rational individualized fact-finding or consideration of the effects of altering their prior decisions, Respondents acted arbitrarily and capriciously in violation of the APA.

Because Respondents have stated an unequivocal intention to remove Petitioner to a third country, that decision and subsequent attempts to remove him are also reviewable as final agency action which are reviewable on habeas only as they pertain to his re-detention. Respondents failed to follow their own regulations in attempting to remove Petitioner to a third country. In their opposition, Respondents stated that Petitioner was given notice that he was to be removed to Mexico. Opp. at 2. However, when the Court asked for further briefing on that notice, Respondents stated that ICE's standard practice is to give notice before third country removals, but, "[a]t this time, Petitioner's file does not contain a copy of a Notice of Third Country Removal, with Mexico identified as the country of removal." ECF No. 13-1 at 3. Respondents do not allege that the notice was actually given and simply missing from the file. Nonetheless, ICE attempted to effectuate third country removal to Mexico. *Id.* Respondents effectively admit to having failed to follow their own procedures in their attempt to remove Petitioner to a third country. In light of that troubling revelation, the Court is persuaded that Respondents did not engage in

rational decision making regarding Petitioner's case or the effects of their policy change on his interests before attempting to effectuate his third country removal. *See Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43; *Dept. of Homeland Security v. Regents of the Univ. of Calif.*, 591 U.S. at 30. Thus, Respondents acted arbitrarily and capriciously in attempting to remove Respondent to a third country without notice.

Respondents' violation of the APA in their decision to revoke Respondent's supervised release and their attempt to remove him to Mexico constitute adequate and independent grounds by which his confinement is unlawful. This Court also **GRANTS** Petitioner's petition for writ of habeas corpus on this basis.

### C. Injunctive Relief on Habeas

In his prayer for relief, Petitioner requests three forms of injunctive relief requiring Respondents to comply with the law. Pet. at 22. The habeas statute, 28 U.S.C. § 2241, grants federal courts the power to enforce the right of personal liberty by granting release or order of bond hearing, but does not create other injunctive powers in the federal courts. *Fay v. Noia*, 372 U.S. 391, 430-31 (1963). While courts have on occasion construed petitions for writ of habeas corpus by pro se prisoner litigants as petitions for writ of mandamus, or generously interpreted mentions of the All Writs Act (*see, e.g., Stevens v. Sheriff of El Paso, Colorado*, 15 Fed. App'x. 740, 742; *Darden v. Davis*, 2016 WL 7803249 (N.D. Tex.) at *2; *Noori v. LaRose*, No. 3:25-cv-1824-GPC-MSB, ECF No. 15 at 26), the Court declines to do so where, as here, Petitioner is represented by competent counsel and pleads only a cause of action that cannot give rise to the requested relief.

### IV. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus is **GRANTED** on due process and APA grounds. The Court **DENIES AS MOOT** Petitioner's remaining claims regarding his present detention as the requested relief of release is granted. Petitioner is to be released subject to the terms of his previous release.

Having ruled on the Petition on the merits, the Court declines to apply the *Winter* factors to determine whether to issue a TRO. Thus, the Court **DENIES AS MOOT** the Motion for Temporary Restraining Order. ECF No. 2.

**IT IS SO ORDERED.**

Dated: November 10, 2025

Honorable James E. Simmons Jr.
United States District Judge